**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **MARY MARKEY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: PWG-18-1867** |
| **WELLS FARGO BANK, N.A.,** *et al.*, | * | |
| **Defendant.** | * | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

**MEMORANDUM OPINION AND ORDER**

Mary Markey, a Maryland resident, lost her Florida rental property (the "Property") in a foreclosure action to which she was not a party. Am. Compl., ECF No. 1-3. U.S. Bank, National Association, as Trustee for Citigroup Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-3 ("U.S. Bank"), which held the Note and Deed of Trust that Ms. Markey had executed in conjunction with the mortgage loan she had obtained for the Property, had initiated the foreclosure action; Wells Fargo Bank, N.A. ("Wells Fargo") had serviced the mortgage. More than three years later, Ms. Markey filed suit against U.S. Bank and Wells Fargo in Maryland state court, alleging violations of Maryland and federal statutes and the common law, based on the statements and representations Wells Fargo made while she attempted to pay her arrears, obtain a loan modification, appeal the denial of that modification, and otherwise avoid foreclosure. Compl., ECF No. 1-2.

Defendants removed the lawsuit to this Court based on diversity jurisdiction. Notice of Removal, ECF No. 1; Civil Cover Sheet, ECF No. 1-1. Pending is their Motion to Dismiss, based

on *res judicata* or *Rooker– Feldman*[1] abstention grounds or, alternatively, for failure to state a claim. ECF No. 19.[2] Because Ms. Markey was not a party to the foreclosure action, *res judicata* does not bar her claims. The *Rooker–Feldman* doctrine also is not a bar. But, the statutes of limitations ran on all but her breach of contract/covenant of good faith and fair dealing claim before she filed suit, and Ms. Markey fails to state a claim for breach of contract. Therefore, I will grant Defendants' motion. I will, however, allow Plaintiff to amend her pleadings with regard to her one timely claim for breach of contract.

## Background[3]

Ms. Markey obtained the mortgage from U.S. Bank, secured by a rental property she purchased in Florida (the "Property"), and she executed a Note and Deed of Trust of the Property in favor of the note holder on May 4, 2005. Am. Compl. ¶¶ 5, 9. Wells Fargo serviced the loan. *Id.* ¶ 4. While Ms. Markey was preoccupied with "serious health and mental health issues" in late 2012, "the auto-debits for her mortgage on the Subject Property apparently [did] not go[] through," and Ms. Markey defaulted on her loan. *Id.* ¶¶ 11–14. Then, in early January 2013, she learned from Wells Fargo that "her loan had been referred to foreclosure." *Id.* ¶¶ 14–16. She attempted

---

[1] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983).

[2] The parties fully briefed the motion. ECF Nos. 19-1, 27, 29. Markey sought leave to file a surreply, ECF No. 30. I accepted her filing as a surreply, and granted Defendants leave to respond, ECF No. 31, which they did not do. Accordingly, I will consider Markey's surreply.

Defendants raised their *Rooker–Feldman* argument for the first time in their reply brief. Because it is jurisdictional, and given that Markey filed a surreply, I will consider the *Rooker–Feldman* argument. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) ("Because the *Rooker–Feldman* doctrine is jurisdictional, we are obliged to address it before proceeding further in our analysis."); *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (noting that Congress did not "confer on district courts appellate jurisdiction over state court judgments" (emphasis removed)). A hearing is not necessary. *See* Loc. R. 105.6.

[3] For purposes of resolving Defendants' Motion to Dismiss, I accept Plaintiff's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). Also, I may take judicial notice of relevant state court filings. *See* Fed. R. Evid. 201(b).

to negotiate a loan modification, but she claims that the modification was "wrongfully denied" after "a 26-month torturous process . . . that . . . put her payments in huge arrears . . . ." *Id.* ¶ 19.

On June 28, 2013, U.S. Bank instituted foreclosure proceedings in Florida state court. *See* State Ct. Docket, ECF No. 19-2; *see also* State Ct. Docket, https://ccmspa.pinellascounty.org/PublicAccess/CaseDetail.aspx?CaseID=1734782. The summons for Ms. Markey was "returned not served," after which U.S. Bank sought and was granted permission to effect service by publication; notice was posted in a local newspaper in Florida once a week for two consecutive weeks. State Ct. Docket.

Ms. Markey alleges that, while the foreclosure action was pending, she was informed "of multiple foreclosure sales dates scheduled, then lifted, then rescheduled." Pl.'s Opp'n 6–7 (citing Am. Compl. ¶¶ 22–26).[4] She submitted "more and more repetitive documents" that defendants requested as part of the loan modification process; appealed the denial of the loan modification; and was told "not to worry about a foreclosure sale, that [Defendants' representative] would seek a postponement of the sale date just like she had done before." *Id.* After U.S. Bank postponed the sale various times, the Property was sold through a foreclosure sale on March 5, 2015. State Ct. Docket; Am. Compl. ¶ 27. Meanwhile, Ms. Markey had gone to the hospital on January 20, 2015 and from there to a rehabilitation facility, where she remained until "mid to late March," when she returned home and read through "her back pile of mail" that had accumulated and learned of the foreclosure sale. Am. Compl. ¶ 27. She claims that she continued to receive correspondence from Defendants about avoiding foreclosure, even after the Property sold. *Id.* ¶ 28.

---

[4] With regard to how the loan was handled during this period, I rely on Plaintiff's description of the Amended Complaint in her Opposition because the page of the Amended Complaint including Paragraphs 21–26 was not filed with this Court when Defendants removed the case to this Court.

Ms. Markey filed suit in Maryland state court on May 1, 2018, challenging how Defendants handled her loan after she missed payments. Compl. Specifically, she claims that Defendants "engag[ed] in unfair acts and practices in their servicing of Plaintiff's Loan," making representations that were "deceptive" and "purposefully and/or negligently misleading and confusing" and caused her to fall farther into arrears and ultimately default on her loan, without having the opportunity to modify it. Am. Compl. ¶¶ 19, 57–60. She lists various specific actions, such as "failure to perform its loan servicing function consistent with its responsibilities under [federal law] and its contracts with the loan holder"; "refusal to accept Plaintiff's proffered payment on the loan"; and "failure to advise Plaintiff of her right to appeal the initial denial of her modification application." *Id.* ¶ 61; *see also id.* ¶¶ 73, 112, 124, 135 (incorporating actions identified in ¶ 61). She claims damages including a lowered credit score, costs and fees, the loss of her property, and "extreme anxiety and emotional distress contributing to the transient ischemic attack ('TIA') (mini-stroke) she suffered in 2013 and her weakened immune system that [is] exacerbating her battle with cancer." *Id.* ¶¶ 67, 84, 98, 105, 113, 130; *see also id.* ¶ 135 (claiming only physical damage for negligent infliction of emotional distress count).

## Standard of Review

Pursuant to Rule 12(b)(6), Markey's Amended Complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "'is to test the sufficiency of a complaint

and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

Defendants assert *res judicata* as an affirmative defense. The Court may consider affirmative defenses such as *res judicata* on motions to dismiss only when they "clearly appear[] on the face of the complaint." *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)). That is the case here, as the suit concerns the propriety of foreclosure proceedings in a Florida state court. Therefore, I will consider *res judicata* as a basis for dismissal. *See id.*

### *Rooker–Feldman*[5]

The *Rooker–Feldman* doctrine "holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). It "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.* at 320. Thus, the doctrine "is to play" a "narrow role" and is "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* at 319, 320 (quoting *Lance*, 546 U.S. at 464 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus.*

---

[5] Because *Rooker–Feldman* is jurisdiction, I consider this doctrine first.

*Corp.*, 544 U.S. 280, 284 (2005))). Indeed, "the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has *never* applied the doctrine to deprive a district court of subject matter jurisdiction," and, "since *Exxon*, [the Fourth Circuit has] never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine." *Id.* at 320.

Notably, "federal courts may still entertain claims the state court examined, so long as those claims do not challenge the state-court *decision* itself." *Lane v. Anderson*, 660 F. App'x 185, 189 (4th Cir. 2016). Defendants argue that "Plaintiff was required to defend the Florida action *in Florida* and assert all her claims and defenses there and may not appeal the decision or seek to vacate the judgment by filing in another court." Defs.' Reply 3. Perhaps so. But, Ms. Markey's claims allege damages based on how Defendants handled her loan and specifically her application for a mortgage loan modification. In all but Count VII (negligent infliction of emotional distress), Ms. Markey claims damages including a lowered credit score and costs and fees, Am. Compl. ¶¶ 67, 84, 98, 105, 113, 130, and for all counts she claims "extreme anxiety and emotional distress contributing to the transient ischemic attack ('TIA') (mini-stroke) she suffered in 2013 and her weakened immune system that [is] exacerbating her battle with cancer," *id.* ¶ 67; *see also id.* ¶¶ 84, 98, 105, 113, 130, 135. "While success on these claims could call into question the validity of the state court's . . . order authorizing foreclosure, the claims do not seek appellate review of that order or fairly allege injury caused by the state court in entering that order." *Vicks v. Ocwen Loan Servicing, LLC*, 676 F. App'x 167, 169 (4th Cir. 2017). Thus, these claims are not barred by the *Rooker–Feldman* doctrine. And, although Plaintiff claims the "loss of the Subject Property" as damages, Am. Compl. ¶¶ 67, 84, 98, 105, 113, 130, she does not seek review of the state court order or injunctive relief regarding the Property in her claim for relief, *id.* at 18. Thus, she does

not bring a direct "challenge [to] the state-court *decision* itself," which this Court would lack jurisdiction to review. *See Lane*, 660 F. App'x at 189. Therefore, Defendants' *Rooker–Feldman* defense is without merit.

### *Res Judicata*

Under Florida law,[6]

"res judicata applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits."

*Kaplan v. Kaplan*, 624 F. App'x 680, 681 (11th Cir. 2015) (quoting *Lozman v. City of Riviera Beach, Fla.,* 713 F.3d 1066, 1074 (11th Cir. 2013) (quotation and citation omitted) (alteration in original)). "The policy underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in any court (except, of course, for appeals by right)." *Nassar v. Nassar*, No. 14-CV-1501-J-34MCR, 2017 WL 26859, at *6 (M.D. Fla. Jan. 3, 2017) (quoting *Zikofsky v. Marketing 10, Inc.*, 904 So. 2d 520, 523 (Fla. 4th Dist. Ct. App. May 25, 2005)), *aff'd*, 708 F. App'x 615 (11th Cir. 2017), *cert. denied*, 139 S. Ct. 68 (2018).

Plaintiff argues that *res judicata* does not apply because she never was served in the foreclosure proceeding, she never appeared, and consequently the Florida court never obtained personal jurisdiction over her. Pl.'s Opp'n 9–10. Certainly, if the Florida court lacked jurisdiction, *res judicata* would not bar a later suit. *See Nassar*, 2017 WL 26859, at *10 ("[O]nly a final judgment on the merits rendered by a *court of competent jurisdiction* may bar a subsequent suit

---

[6] Florida law regarding *res judicata* applies because the relevant prior proceeding was in a Florida state court, and this Court "must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

raising the same claims." (emphasis added)); *Hedge v. Hedge*, 816 So. 2d 241, 243 (Fla. Dist. Ct. App. 2002) (holding that order that was void for lack of personal jurisdiction could not form basis for *res judicata*); *see also Williams v. Cadlerock Joint Venture, L.P.*, 980 So. 2d 1241, 1243 (Fla. Dist. Ct. App. 2008) ("A foreign judgment need not be recognized if the foreign court lacked either personal or subject matter jurisdiction. . . ."If . . . the defendant did not have the opportunity to contest jurisdiction, he may raise the issue subsequently in a proceeding brought to enforce the judgment." (citations omitted)).

And, while the state court docket shows that Ms. Markey ultimately was served, it was constructive service by publication after the summons initially was "returned not served." *See* State Ct. Docket; *see also* Fla. Stat. Ann. § 49.011(1) ("Service of process by publication may be made in any court on any party identified in § 49.021 in any action or proceeding: . . . [t]o enforce any legal or equitable lien or claim to any title or interest in real or personal property within the jurisdiction of the court . . . ."). "'The case law is clear . . . that constructive service by publication under [section 49.011(1), Florida Statutes] cannot confer a court with jurisdiction over a person.' Rather, constructive service confers only *in rem* jurisdiction on the trial court." *Archer v. U.S. Bank Nat'l Ass'n*, 220 So. 3d 477, 478 (Fla. Dist. Ct. App. 2017) (quoting *Milanick v. State*, 147 So.3d 34, 35 (Fla. Dist. Ct. App. 2014)). Significantly, this does not mean that the court could not proceed with the foreclosure action; "personal jurisdiction is not required to initiate a foreclosure action because foreclosure proceedings instituted against the subject property are in rem proceedings." *Id.*

Defendants argue that the Florida court nevertheless could exercise personal jurisdiction over Plaintiff based on her ownership of the Property in Florida. It is true that a nonresident of Florida, like Ms. Markey, who "[o]wn[s] . . . any real property within [Florida]," as Ms. Markey did at the time of the foreclosure action, "thereby submits himself or herself . . . to the jurisdiction

of the court of [Florida] for any cause of action arising from [that ownership]." Fla. Stat. § 48.193(1)(a)(3). But this misses the point. The fact that the court *could* exercise jurisdiction over Ms. Markey does not mean that it *did*. Rather, "service [must be] perfected as required by law" for the state court to have personal jurisdiction over the defendant. *See P.S.R. Assocs. v. Artcraft-Heath*, 364 So. 2d 855, 857 (Fla. Dist. Ct. App. 1978); *see also* Fla. Stat. § 48.193(3) ("Service of process upon any person who is subject to the jurisdiction of the courts of [Florida] as provided in this section may be made by personally serving the process upon the defendant outside [Florida], as provided in § 48.194.");[7] *Nat'l League for Nursing v. Bluestone*, 388 So. 2d 1090, 1091 (Fla. Dist. Ct. App. 1980) ("[A] party invoking this long-arm statute must effect personal service upon the defendant pursuant to Section 48.194, Florida Statutes" to establish jurisdiction.). In the foreclosure action, U.S. Bank resorted to constructive service by publication which, as noted, cannot confer personal jurisdiction. *See Archer*, 220 So. 3d at 478–79. Therefore, the state court did not obtain personal jurisdiction over Ms. Markey in the foreclosure proceeding. *See id.*

Still, the foreclosure proceeding is an *in rem* proceeding over which the Florida court had subject matter jurisdiction, despite its lack of personal jurisdiction over the homeowner. *See*

---

[7] Section 48.194 provides:

> Where in rem or quasi in rem relief is sought in a foreclosure proceeding . . . , service of process on a person outside of this state where the address of the person to be served is known may be made by registered mail as follows:

> (a) The party's attorney or the party, if the party is not represented by an attorney, shall place a copy of the original process and the complaint, petition, or other initial pleading or paper and, if applicable, the order to show cause issued pursuant to s. 702.10 in a sealed envelope with adequate postage addressed to the person to be served.

> (b) The envelope shall be placed in the mail as registered mail.

> (c) Service under this subsection shall be considered obtained upon the signing of the return receipt by the person allowed to be served by law.

Fla. Stat. Ann. § 48.194(2).

*Archer*, 220 So. 3d at 478–79.  Thus, this case turns on whether *in rem* foreclosure proceedings have preclusive effects on the property owner (as opposed to the property itself) if the owner does not submit to the court's jurisdiction but then files suit against the lenders, that is, whether the parties are identical in a subsequent proceeding when the court did not have personal jurisdiction over one party in the initial foreclosure proceeding.  The Florida courts say no.  *See Matz v. O'Connell*, 155 So. 2d 705, 708 (Fla. Dist. Ct. App. 1963).

In *Matz*, the Florida District Court of Appeals addressed this very issue.  The Matzes mortgaged real property that they owned in Florida. 155 So. 2d at 706.  The holder instituted a foreclosure action in Florida after the Matzes, who were not Florida residents, defaulted on the loan.  *Id.*  "Constructive service of process was obtained upon the[m] . . . but they did not appear in the foreclosure suit."  *Id.*  The court entered a final decree of foreclosure, as well as an order for a foreclosure sale.  *Id.*  The property sold for less than the amount due on the note, and the holder sued the Matzes to recover the difference.  *Id.*  In the second action, the Matzes "sought to introduce into evidence" facts about the value of the property, but the court would not admit it, relying instead on "a conclusive presumption that the value of the mortgaged property sold by the clerk was the amount bid at the sale" when it entered judgment against the Matzes.  *Id.* at 706–07.

On appeal, the court noted that, "[i]f the court had had personal jurisdiction of the defendants in the mortgage foreclosure proceedings, then the sale price of the property at the foreclosure sale would have been conclusive as to these parties on the question of the amount remaining payable on the promissory note."  *Id.* at 707.  Because the Matzes "had been given only constructive service of process," such that the court did not have personal jurisdiction over them in the foreclosure action, the court considered "the force and effect of a judgment obtained in an *in rem* proceeding" to determine whether the findings in the foreclosure action had preclusive effects on the mortgagor.  *Id.*

The Florida appellate court looked to the seminal case *Pennoyer v. Neff*, 95 U.S. 714

(1878), in which the Supreme Court had held:

> [I]f there is no appearance of the defendant, and no service of process upon him,
> the case becomes in its essential nature a proceeding *in rem*, the only effect of which
> is to subject the property attached, to the payment of the demand which the court
> may find to be due to the plaintiff. That such is the nature of this proceeding in this
> latter class of cases is clearly evinced by two well established propositions: first,
> the judgment of the court, though in form a personal judgment against the
> defendant, has no effect beyond the property attached in that suit. No general
> execution can be issued for any balance unpaid after the attached property is
> exhausted. No suit can be maintained on such a judgment in the same court, or in
> any other; nor can it be used as evidence in any other proceeding not affecting the
> attached property; nor could the costs in that proceeding be collected of defendant
> out of any other property than that attached in the suit. Second, the court, in such a
> suit, cannot proceed, unless the officer finds some property of defendant on which
> to levy the writ of attachment. A return, that none can be found, is the end of the
> case and deprives the court of further jurisdiction, though the publication may have
> been duly made and proven in court.

*Id.* at 707 (quoting *Pennoyer*, 95 U.S. at 725–26). Thus, the Supreme Court concluded, judgments

in proceedings *in rem* "are without any binding force, except as to property or interests in property

within the State . . . ." *Id.* at 708 (discussing *Pennoyer*).

The Florida court observed that, following *Pennoyer* and in Florida in particular,

> [t]he proceeding in such cases, though in the form of a personal action, has been
> uniformly treated (where [as here] personal service was not obtained and the party
> did not voluntarily appear) as effectual and binding merely as a proceeding *in rem*,
> and as having no operation beyond the disposition of the property or some interest
> therein.

*Id.* (collecting cases). The court held that "the only lawful force and effect of the mortgage

foreclosure proceedings was that as concerned and affected the mortgaged property, and that the

mortgage foreclosure proceedings have no binding force and effect against the defendants

personally." *Id.* at 709. Accordingly, the *in rem* foreclosure proceeding concerning Ms. Markey's

property has no *res judicata* effects on Ms. Markey personally. *See id.* at 707–09; *see also*

*Pennoyer*, 95 U.S. at 725–26. Indeed, having not participated in the foreclosure proceeding,

Plaintiff did not have "her day in court" and it would not accord with due process to give the Florida proceeding *res judicata* effect in this lawsuit. *See Nassar*, 2017 WL 26859, at *6. Therefore, insofar as Defendants base their motion to dismiss on *res judicata*, it is denied. *See id.*; *Matz*, 155 So. 2d at 707–09.

## Failure to State a Claim

Plaintiff brings state law claims of violation of the Maryland Consumer Protection Act, Md. Code Ann., Com. Law § 13- 101 *et seq.* ("MCPA"), (Count I); fraud and deceit and/or negligent misrepresentation (Count II); promissory estoppel (Count III); breach of contract/covenant of good faith and fair dealing (Count IV); negligence (Count V); and negligent infliction of emotional distress (Count VII), as well as a federal statutory claim for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA") (Count VI). Defendants argue that Plaintiff fails to state a claim under any of these causes of action.

### Choice of Law

Defendants assert that it is unclear whether Plaintiff brings these claims under Maryland or Florida law. Defs.' Mem. 4 n.1. Indeed, Plaintiff does not identify in her filings the law governing her claims, although she does consistently cite Maryland law. *See* Pl.'s Opp'n. In Defendants' view, the applicable law is not relevant at this juncture, *see* Defs.' Mem. 4 n.1, and they proceed to analyze the claims under Maryland law, perhaps because it is the most convenient choice. But, choice of law can make a significant difference. For example, Maryland law does not recognize a cause of action for negligent infliction of emotional distress, *see Rollins v. Verizon Maryland, Inc.*, No. RDB 09-2379, 2010 WL 4449361, at *8 (D. Md. Nov. 5, 2010), whereas Florida law does, *see Kendron v. SCI Funeral Servs. of Fla., LLC*, 230 So. 3d 636, 637 (Fla. Dist. Ct. App. 2017) (stating elements of claim for negligent infliction of emotional distress). And, the

statute of limitations for negligence and fraud claims is four years under Florida law, Fla. Stat. Ann. § 95.11(3)(a), (j), compared to the three-year common-law statute of limitations in Maryland, *see* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Therefore, I must determine which law to apply before deciding whether Ms. Markey states a claim under any of her causes of action.

"In an action [like this case] based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Limbach Co. LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Maryland is the forum state, and Maryland courts adhere to the doctrine of *lex loci delicti* when determining the law that governs tort claims, meaning the law of the state where the injury occurred applies. *Lewis v. Wletzky*, 31 A.3d 123, 129 (Md. 2011). Ms. Markey is a citizen and resident of Maryland, and while the Property is in Florida and the foreclosure occurred in Florida, Ms. Markey challenges not the foreclosure itself but how Defendants handled their interactions with her leading up to the foreclosure. *See* Am. Compl. Additionally, she claims that "some of the wrongful practices and conduct alleged" occurred in Maryland; "Plaintiff made many of the Loan payments for this property in Maryland and some facts concerning Plaintiff's attempted loan modification and attempted but rejected payments on the Loan at issue in this lawsuit were handled in Maryland"; and "the adverse financial impacts on Plaintiff as alleged . . . are endured in Maryland." Am. Compl. ¶ 8. Thus, given that the Property was a rental property and not Ms. Markey's residence, any injury Ms. Markey suffered as a result of Defendants' wrongful conduct in handling her mortgage loan and loan modification application was suffered in Maryland. Accordingly, Maryland law—the law under which both parties analyze her claims—applies to her tort claims. *See Lewis*, 31 A.3d at 129.

As for Ms. Markey's breach of contract claim, Maryland courts apply the doctrine of *lex loci contractus*, which "requires that, when determining the construction, validity, enforceability, or interpretation of a contract, [courts] apply the law of the jurisdiction where the contract was made." *Cunningham v. Feinberg*, 107 A.3d 310, 326 (Md. 2015). Additionally, Maryland will enforce contractual parties' choice of law unless "the chosen state has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties choice" or applying the chosen law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state." *Nat'l Glass, Inc. v. J.C. Penney Props., Inc.*, 650 A.2d 246, 248 (Md. 1994) (quoting Restatement (Second) Conflict of Laws § 187(2) (1971)). The mortgage loan selects Florida law as the governing law. Loan ¶ 16, Ex. to Compl. in Foreclosure Action, State Ct. Docket.[8] And it appears that the place where the parties entered into the mortgage loan was Florida, as the mortgage states that it "was prepared by: Wells Fargo Bank, N.A." in Clearwater, Florida. *See id.* at 1. Therefore, Florida law applies to Ms. Markey's breach of contract claim. *See Cunningham*, 107 A.3d at 326; *Nat'l Glass*, 650 A.2d at 248.

<u>Statute of Limitations</u>

Defendants contend that "Plaintiff's Complaint likely is barred in whole or in part by the applicable statutes of limitation" because "[t]he claims alleged each appear to have a three-year statute[] of limitations." Defs.' Mem. 7 n.2 (citing 12 U.S.C. § 2614 (three-year statute of limitations for RESPA claims under § 2605) and Cts. & Jud. Proc. § 5-101 (three-year statute of

---

[8] Plaintiff did not attach the mortgage to her pleading, and Defendants did not file it as an exhibit with their motion, but it is available on the docket sheet for the foreclosure action, where it was attached to the pleading. *See* State Ct. Docket. It may be judicially noticed in this case. Fed. R. Evid. 201(b).

limitations for Maryland common law claims). Ms. Markey did not respond to this argument. *See* Pl.'s Opp'n; Pl.'s Surreply.

Plaintiff's claims of fraud and deceit and/or negligent misrepresentation (Count II), promissory estoppel (Count III), negligence (Count V), and negligent infliction of emotional distress (Count VII), are subject to Maryland's three-year common-law statute of limitations.[9] Cts. & Jud. Proc. § 5-101. Her claim for violation of the Maryland Consumer Protection Act (Count I) also is subject to this three-year statute of limitations. *See Littlejohn v. BWW Law Grp. & Assocs.*, No. PWG-14-1696, 2014 WL 6391119, at *5 (D. Md. Nov. 14, 2014) ("The Maryland Court of Appeals has held that claims under the Consumer Protection Act are subject to the three-year statute of limitations provided for civil claims in Cts. & Jud. Proc. § 5–101." (citing *Master Fin., Inc. v. Crowder,* 972 A.2d 864, 872 (Md. 2009)). The statute of limitations for Ms. Markey's RESPA claim similarly is no longer than three years. *See Pitts v. Mozilo*, No. GJH-15-451, 2015 WL 4770941, at *3 (D. Md. Aug. 11, 2015) ("A RESPA claim brought by a private litigant must be brought within either one or three years from the date of the occurrence of the violation, depending on the type of violation. *See* 12 U.S.C. § 2614.").

Ms. Markey's 18-page, single-spaced,138-paragraph Amended Complaint describes numerous alleged tortious acts and statutory violations. Significantly, almost all of the alleged

---

[9] Negligent infliction of emotional distress is not a cause of action that Maryland recognizes and is subject to dismissal on this basis as well. *Rollins v. Verizon Maryland, Inc.*, No. RDB 09-2379, 2010 WL 4449361, at *8 (D. Md. Nov. 5, 2010) (citing *Miller v. Bristol–Myers Squibb Co.,* 121 F. Supp. 2d 831, 839 (D. Md. 2000). While Plaintiff acknowledges that Maryland does not recognize the tort, she urges the Court to follow other states and recognize it or to allow her to amend to state a claim for intentional infliction of emotional distress. Pl.'s Opp'n 29. Yet, I am bound by the Maryland Court of Appeals' analysis of state law, which does not recognize the tort, *see Rollins*, 2010 WL 4449361, at *8. In any event, as either a negligent or intentional tort, it would be barred by the three-year statute of limitations.

actions giving rise to her claims predated the March 5, 2015 foreclosure sale of the Property. *See* Am. Compl. ¶¶ 61, 73, 94–96, 112, 124–27, 135. Plaintiff filed this lawsuit on May 1, 2018, more than three years later. These claims all are barred by the applicable statutes of limitations. *See* 12 U.S.C. § 2614; Cts. & Jud. Proc. § 5-101; *Pitts*, 2015 WL 4770941, at *3; *Littlejohn*, 2014 WL 6391119, at *5.

Certainly, Ms. Markey also alleges that "[e]ven after [her] property was taken from her in a foreclosure sale, she kept getting correspondence from Wells Fargo to the effect that it wanted to work with her to avoid foreclosure," Am. Compl. ¶ 28, and that she "continued her efforts for relief after the March 5, 2015 foreclosure sale," *id.* ¶ 29. She claims that she provided a Wells Fargo representative "with all information and documents he requested over a period of nearly two years," and then, "[v]ia letter dated January 2, 2018, [he] informed her that everything had been done correctly and there was nothing further that Wells Fargo would do for her." *Id.* ¶ 29. But, none of the damages she alleges stem from any actions taken after the foreclosure. *See, e.g.*, Am. Compl. ¶¶ 67, 84, 98, 113, 129, 130; *see also* Pl's Opp'n 17 ("On numerous occasions, from the outset of the loan modification application process[] through even after her property had been foreclosed upon, Wells Fargo representatives sent Mrs. Markey letters saying that they were 'here to help you,' 'committed to helping you ... making it the best experience possible.' The statements in these letters were false and/or misleading . . . , as Wells Fargo in fact did not help her save her property, it instead insured that she did not, by dragging out the process, not considering all of her income in its calculations, running up her arrears and collecting fees, depriving Plaintiff of her then low interest loan and failing to modify it, and then reaping the rewards of turning her file over to foreclosure proceedings, all to the detriment of Plaintiff . . . ." (citing Am. Compl. ¶¶ 61, 67 and proposing to file a second amended complaint to bolster allegations that communications

continued after foreclosure)). Thus, Plaintiff's tort, Consumer Protection Act, and RESPA claims are untimely and must be dismissed. *See* 12 U.S.C. § 2614; Cts. & Jud. Proc. § 5-101; *Pitts*, 2015 WL 4770941, at *3; *Littlejohn*, 2014 WL 6391119, at *5. Further, dismissal is with prejudice as additional factual allegations will not affect the statute of limitations, such that amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

As for Ms. Markey's breach of contract claim (Count IV), a five-year statute of limitations applies under Florida law. *See* Fla. Stat. Ann. § 95.11(2)(b). Thus, Plaintiff's claim, filed May 1, 2018, is timely with regard to all alleged breaches that occurred after May 1, 2013. *See id.*

<u>Breach of Contract</u>

Ms. Markey claims breach of two contracts – the mortgage loan agreement and the "Servicer Participation Agreement that Wells Fargo entered into "with the federal government . . . in 2009," for which she asserts that she "is a third party clearly intended to be benefitted by the SPA." Am. Compl. ¶¶ 38, 103. She describes Wells Fargo's obligations under the SPA. *Id.* ¶¶ 42–47, 51. Ms. Markey did not attach either contract to her pleadings or incorporate their terms, other than a few brief quotes from the SPA. *See id.* She claims that Wells Fargo (as U.S Bank's agent) "had a duty pursuant to its servicing responsibility to act in good faith and in compliance with modification rules" yet "failed to act in good faith when it wrongfully processed and denied Plaintiff's RMA, refused to accept her tendered payments and told her no future such payments would be accepted because her loan was in foreclosure, and committed the other acts and offenses enumerated in Paragraph 61 . . . ." *Id.* ¶ 104.[10]

---

[10] Paragraph 61 alleges

> Wells Fargo's deceptive and unfair practices that deceived and misled the Plaintiff
> include but are not limited to: a) its failure to perform its loan servicing function

Under Florida law, "[t]he elements of a breach of contract cause of action are: (1) a valid contract, (2) a material breach, and (3) damages." *Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, No. 2D17-4158, 2019 WL 985300, at *3 (Fla. Dist. Ct. App. Mar. 1, 2019) (quoting *Ferguson Enters. v. Astro Air Conditioning & Heating, Inc.*, 137 So. 3d 613, 615 (Fla. Dist. Ct. App. 2014)). Notably, the Florida Rules of Civil Procedure require that any written contract "be incorporated in or attached to the pleading" when a party claims breach of contract. *See id.* (quoting Fla. R. Civ. P. 1.130(a)). Further, "[a] complaint based on a written instrument does not state a cause of action until the instrument or an adequate portion thereof, is attached to or incorporated in the complaint." *Id.* (quoting *Glen Garron, LLC v. Buchwald*, 210 So.3d 229, 233 (Fla. Dist. Ct. App. 2017)). Ms. Markey's breach of contract claim must be dismissed on this basis alone. *See id.*

---

consistent with its responsibilities under TARP, Wells Fargo's SAP pursuant to TARP, and its contracts with the loan holder; b) its failure to modify the subject Loan and/or provide alternatives to foreclosure and its use of delaying and other unfair means to deny Plaintiff the relief to which she was entitled under HAMP and internal programs; c) its failure to include proven monthly income of $2,685.44 in her eligibility calculations; d) its refusal to include the Subject Property's rental income in her eligibility calculations and making other intentional or negligent errors in the processing of her application; e) its misapplication of financial information provided by Plaintiff; f) its refusal to accept Plaintiff s proffered payment on the loan and insistence that she could not make interim payments during the modification process; g) its dragging the application process out by repeatedly asking for the same documentation already provided as well as for additional documentation; h) its reliance upon an inaccurate appraisal; i) its failure to advise Plaintiff of her right to appeal the initial denial of her modification application; j) its failure to provide the basis for its denial of her modification application; k) its placement of the Subject Property in foreclosure proceedings while her modification application was still pending; l) its foreclosure and sale of the Subject Property despite verbal assurances that the foreclosure sale date would be postponed; and m) its feigned representation that it wanted to help Plaintiff avoid foreclosure when its actions were to the contrary.

Defendants argue that "Maryland does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing, so any such claim fails as a matter of law." Defs.' Mem. 13. But it is Florida law, not Maryland law, that applies to this claim. Even so, under Florida law, "the covenant of good faith cannot be used to create a breach of contract . . . where there was no breach of any express term of the contract." *Avatar Dev. Corp. v. De Pani Const., Inc.*, 834 So. 2d 873, 876 (Fla. Dist. Ct. App. 2002). In other words, a party may allege a breach of the duty of good faith, but not "as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id.* (quoting *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.,* 710 So.2d 573, 574 (Fla. Dist. Ct. App. 1998)). And, "an implied covenant of good faith cannot be used to vary the unambiguous terms of a written contract" because, "when parties negotiate 'a fully specified, unambiguous contract, this court is not at liberty to change their bargain.'" *Id.* (quoting *Indian Harbor Citrus, Inc. v. Poppell*, 658 So.2d 605, 607 (Fla. Dist. Ct. App. 1995)). While Ms. Markey has neither attached nor quoted sufficiently from either contract to show whether Defendants' alleged breach of the duty of good faith stems from a breach of an express contractual term, the fact that she does not also claim that they breached any express term suggests that they have not.

Defendants also contend that "the loan does not require Defendants approve a loan modification." Defs.' Mem. 13. Plaintiff counters that "[t]his Court should reject this narrow view of Plaintiff's claim and the applicable law," insisting that "Wells Fargo had the duty, as the agent of U.S. Bank, to service the mortgage agreement in good faith and fairly." Pl.'s Opp'n 28. While this cursory argument is insufficient to save Ms. Markey's breach of contract claim, she does request leave to amend to cure any pleading deficiencies. Pl.'s Opp'n 3; Pl.'s Surreply 2–3. Defendants contend that Plaintiff already had a chance to amend. Defs.' Reply 5. In response,

Plaintiff notes that her Amended Complaint simply renumbered paragraphs and added a cause of action without amending the substantive allegations and without the benefit of Defendants' motion to dismiss. Pl.'s Surreply 3. And, on the July 20, 2018 pre-motion conference call that Judge Chuang held, when this case was assigned to him previously, he asked if Ms. Markey wanted to amend her pleadings in response to Defendants' pre-motion letter, ECF No. 10, and their improperly-filed original motion to dismiss, ECF No. 7,[11] before Defendants properly filed their motion to dismiss. She said no, but contradicting herself, she also said that she had wanted to file a second amended complaint. Yet she has not had that opportunity. Accordingly, if Ms. Markey can state a claim for breach of contract/covenant of good faith and fair dealing under Florida law, as described above, Plaintiff may file a second amended complaint that includes only that claim. Thereafter, Defendants may renew their motion to dismiss (provided they first comply with ECF No. 28, and file a letter setting forth the basis of the motion they seek to file) if they still believe the claim is deficient. Should Ms. Markey choose to amend, she must attach or incorporate the relevant contractual provision that she believes Defendants have breached, as Florida law requires. And, her amended complaint only may address the single remaining contract claim, and it must be double-spaced, 12-point font, and comply with the pleading requirements of Fed, R. Civ. P. 8(a). If the amended complaint fails to do so, it is subject to being stricken without further notice.

## **ORDER**

Accordingly, it is, this 20th day of March, 2019 hereby ORDERED that

1. Defendants' Motion to Dismiss, ECF No. 19, IS GRANTED as follows:

---

[11] Judge Chuang denied the original motion to dismiss without prejudice, for failed to comply with his Case Management Order, ECF No. 5.

a. Plaintiff's claims for fraud and deceit and/or negligent misrepresentation (Count II), promissory estoppel (Count III), negligence (Count V), negligent infliction of emotional distress (Count VII), and violations of the Maryland Consumer Protection Act (Count I) and RESPA (Count VI) are barred by the relevant statutes of limitation and therefore dismissed with prejudice for failure to state a claim;

b. Plaintiff's claim for breach of contract/covenant of good faith and fair dealing (Count IV) is dismissed without prejudice for failure to state a claim;

c. Plaintiff may file a second amended complaint that must be limited to a single claim for breach of contract/covenant of good faith and fair dealing, in accordance with Florida law, on or before April 5, 2019;

d. If Plaintiff does not file a second amended complaint, the claim will be dismissed with prejudice and the case will be closed; and

e. If Plaintiff files a second amended complaint and Defendants believe that she still fails to state a claim, they may file letter that complies with ECF No. 28 within 14 days, following which a conference call will be set in to schedule briefing of the motion; and

2. The Clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Plaintiff.

_____ /S/ _____
Paul W. Grimm
United States District Judge